

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GERALD P. GAMBO, *et al.*, | ) |
| | ) No. 05 C 3701 |
| Plaintiff, | ) |
| | ) Judge Mark Filip |
| v. | ) |
| | ) |
| LUCENT TECHNOLOGIES, Inc., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion of Plaintiff, Gerald Gambo (also "Plaintiff"), for an Order to Authorize Notice to Similarly-Situated Persons Pursuant to 29 U.S.C. § 216(b) ("Motion"). The Motion also extensively references evidentiary materials concerning Plaintiffs Yolanda Montenegro and Marcus Washington, who have opted into this suit, which alleges violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*[1] Plaintiff seeks the Court's approval of a proposed notice of the action to other similarly-situated employees and former employees of Defendant, Lucent Technologies, Inc. (also "Defendant" or "Lucent"), who worked in Lucent's North American Region Delivery and Customer Support Center ("NAR"). Defendant argues that notice should not be provided, and in the alternative, that the proposed notice should be amended in multiple respects. Plaintiff adopted changes to the proposed notice in response to some of Defendant's objections, and limited areas of dispute endure. As explained below, Plaintiff's Motion is granted in substantial part, as outlined herein, and the proposed notice is approved subject to modifications discussed later.

---

[1] An additional plaintiff, Karen Foster, has opted-in to this action, but her name does not appear on any of the pleadings relating to Plaintiff's request to authorize notice.

## BACKGROUND

Defendant is a large corporation comprised of three business groups: the Network Solutions Group, Lucent Worldwide Services, and Bell Labs. (D.E. 16, Ex. 1 at 1.)[2] Lucent Worldwide Services is comprised of a number of operating and support units, including the North American Region Delivery and Customer Technical Support ("NAR") organization. NAR is comprised of twelve operating groups. (*Id.*) Each of the twelve operating groups has its own management structure with its own directors and managers. (*Id.*)

Plaintiff Gambo was employed in the position of Senior Technical Associate ("STA") in the Wireless Technical Support Center ("WTSC"), a unit within NAR. (D.E. 12 at 2.) He alleges that between at least June 2002, and November 2004, Defendant had a policy of not paying overtime wages to STAs in NAR for "all 'on-call' time worked during individual work weeks." (D.E. 1 at 3.) Plaintiff alleges that this practice violates the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, which requires employers to pay one and one-half times an employee's regular hourly pay for hours worked in excess of forty hours in an individual workweek. (*Id.*)

Attached to Plaintiff's Motion are three exhibits which include, *inter alia*, affidavits from persons employed by Defendant as STAs stating that, during the course of their employment as STAs, they each worked in excess of forty hours per week while performing pager duty and were not paid overtime wages for their excess hours worked. (D.E. 12, Exs. A-C.) Plaintiff Gambo's affidavit (the "Gambo Affidavit") states that he is employed as an STA within WTSC and that he

---

[2] Docket entries are designated as "D.E. ___," followed by the appropriate district court docket number.

regularly worked in excess of forty hours without receiving overtime wages. (*Id.*, Ex. A at 1.) It also states that, during the time he spent on pager duty, he was unable to travel more than several minutes away from his home. (*Id.* at 2.) The second affidavit (the "Montenegro Affidavit"), from Yolanda Montenegro ("Montenegro"), states that she worked as an STA within WTSC, and that she worked in excess of forty hours without being paid overtime. (*Id.*, Ex. B at 1.) Attached to Montenegro's affidavit is a document describing WTSC's pager-duty protocol, which lists the hours during which technical support was provided as well as the procedures for creating an "assistance request." (*Id.*, Att. 1.) A second attachment is an email exchange between Montenegro and Therone Watson ("Watson"), the Technical Manager for Customer Solutions Technical Support, in which Montenegro inquired about "[o]ut-of-hrs backpay for STA's in the WTSC" and Watson replied that "[i]t looks like we were out of compliance in the regards of compensation for time worked over 40 hours for non-exempt employees." (*Id.*, Att. 2.) In that email, Watson also suggested to Montenegro that she "work with [her] manager and HR to determine what was the work that you did over the last two years and how does fit [sic] within the FLSA agreement." (*Id.*) The final affidavit (the "Washington Affidavit") is from Marcus Washington ("Washington"), who states that he has been employed within NAR as an STA. (*Id.*, Ex. C at 1.) Washington also declares that he customarily worked in excess of forty hours per week, as did other persons employed as STAs, and that much of that excess time was spent performing pager duty. (*Id.* at 2.)

Defendant has also submitted a number of declarations and supporting documents. The first is an affidavit from Suzanne Labracio (the "Labracio Affidavit"), who is employed by Defendant as a Human Resources Manager. (D.E. 16, Ex. 1 at 1.) The Labracio Affidavit states

that Defendant conducted an internal investigation to determine "whether some STAs were owed overtime for pager duty which may have restricted the use of their personal time." (*Id.* at 2.) According to the Labracio Affidavit, eight employees were identified as being affected by "the issue"—that is, they may have been owed overtime compensation. (*Id.*) Defendant, without admitting any of these employees were owed overtime, "offered these employees monies for all the time that they worked primary pager duty." (*Id.*) The Labracio Affidavit states that five of the eight have accepted Defendant's offer as "full and final satisfaction of all claims for lost compensation," and those employees received amounts ranging from $19,965.53 to $65,127.37. (*Id.* at 2-3.) Attached to this affidavit are the letters Defendant sent to the five employees who accepted Defendant's offer. (*Id.*, Ex. 1A.)

Defendant's second submission is an affidavit from Gregory Givens ("Givens"), a Technical Manager who was Plaintiff Gambo's supervisor in May 2004. (*Id.*, Ex. 2.) Givens stated that in May 2004, Plaintiff was the only STA working for him. Givens also stated that Plaintiff Gambo, who was on pager duty during that time, was required "to respond to a page within ten minutes" and "to access the customer's switch by computer in order to analyze the problem." (*Id.*)

Defendant's third submission is an affidavit from Stephen Bruzda ("Bruzda"), a Technical Manager in the NAR. Bruzda states that he had one STA working for him in September 2004; that STA "was not assigned on-call or pager duty in excess of forty hours during any week because the organization utilized a shift schedule for such duties." (*Id.*, Ex. 3 at 1.)

4

Defendant's fourth submission is an affidavit from Robert Posch ("Posch"), a Technical Manager at Lucent, who managed the 5ESS International Support team in September 2004. (*Id.*, Ex. 4.) Posch states that he had one STA working for him in September 2004, and that STA was not restricted geographically during pager duty. Posch also stated that Defendant provided the STA with a cell phone for the callbacks and that there was no requirement that the STA have access to a computer or a database to provide support. (*Id.*)

Defendant's final submission is an affidavit from Robert E. King ("King"), also a Technical Manager at Lucent, who managed a team that provided support services for NAR 5ESS Switches. (*Id.*, Ex. 5 at 1.) King states that in September 2004, he had four STAs reporting to him that were assigned out-of-hours pager duties. (*Id.*) King further states that none of those STAs were restricted geographically during pager duty, they were provided with a cell phone to enable call-backs, and that there was no requirement that they have access to computers or databases to perform pager duty. (*Id.*)

Gambo, after being granted leave to supplement the Motion for notice, provided additional evidentiary material obtained in early discovery. (D.E. 22.) Plaintiff submitted:

- The relevant overtime-related portions from Defendant's 2001, 2003, and 2004 "Personnel Guides." (*Id.*, Exs. A-C.)

- An email from Michele Suarez, dated February 9, 2005, entitled "Prestinario SAT Overtime Report." (*Id.*, Ex. D.) This email identified twelve STAs, working under three different directors and eight different supervisors, who were potentially owed overtime pay. (*Id.*)

5

- An HR Advisory Council Report, dated May 23, 2005, entitled "Fair Labor Standards Act (FLSA) Pay Issues for On-Call (Pager) Duty for Non-Exempt Employees." (*Id.*, Ex. E.) This report identifies overtime-pay issues for STAs on pager duty in LWS Mobility Product Solution and LWS-Retrofits-Wireline. (*Id.*)

- An email from Hilda Leveno, HR Director and Member of the HR Advisory Council, dated May 24, 2005, stating that some line organizations conducted an analysis of STAs' potential overtime-pay claims. (*Id.*, Ex. F.)

- An August 9, 2005, presentation entitled "Prestinario Organization STA OT Summary" that summarizes potential overtime compensation issues. (*Id.*, Ex. G.)

- A February 22, 2005, email from Givens to Umesh Joshi forwarding reports prepared by Marilyn Barnes ("Barnes"), Director of LWS Mobility Solutions Technical Support, in which Barnes states that Lucent owes at least six STAs "BIG Time!" for "the past 2 years." (*Id.*, Ex. H.)

Defendant also filed a supplemental memorandum that included Plaintiff's Answer to Lucent's Rule 36 Requests for Admission (D.E. 30, Ex. B), which Answer purportedly establishes that Gambo was the only one of the three Plaintiffs who was assigned to secondary and tertiary pager duty. The supplemental memorandum also includes an affidavit from Melinda Jackson-Douglas ("Douglas"), a Senior HR Business Partner at Lucent. (*Id.*, Ex. A.) Douglas states that NAR is divided into numerous operating groups, that those operating groups are divided into numerous subgroups, and that Gambo and Montenegro worked under Barnes in a part of the Technical Support Services operating group, the WTSC. (*Id.*) Douglas further states that Montenegro and Washington worked under Marrine Thomas in a part of the Professional

Services Delivery and Engineering operating group. (*Id.*) Douglas does not identify the time-frame during which any Plaintiff worked in any particular group, nor does Douglas state that no Plaintiff worked in groups besides those listed in the affidavit.

## ANALYSIS

A.   The Two-Step Process

FLSA Section 7 requires covered employers to pay their employees overtime wages (one and one half regular rate) for hours worked in excess of forty hours in a single week.[3] Section 216(b) of Title 29 of the United States Code (also "FLSA Section 16(b)") permits a plaintiff to file a collective action, on behalf of himself or herself and other employees similarly situated, to recover unpaid overtime wages and liquidated damages from employers who violate FLSA Section 7. A prospective member of the collective action may "opt-in" by filing a written consent in the court where the action is brought; a person who does not opt-in is not part of the collective action and is not bound by the court's decision. *Id.*; *Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 441 (N.D. Ill. 1982). FLSA Section 16(b) does not specify a procedure for providing notice to other prospective members of the collective action; district courts are afforded discretion to sensibly shape the notice process. *See Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989) (interpreting opt-in provision in ADEA that incorporates Section 16(b)). District courts in the Northern District of Illinois have regularly exercised discretionary authority over the notice process. *See, e.g., Persin v. Careerbuilder, LLC*, No. 05 C 2347, 2005 WL 3159684 (N.D. Ill. Nov. 23, 2005) (Kocoras, C.J.); *Perez v. Radioshack Corp.*, No. 02 C 7884,

---

[3]   Defendant does not dispute that its employees are covered by FLSA's "enterprise coverage" provision; however, it does deny that it violated the requirements of the FLSA. (D.E. 10 at 2.)

2003 WL 21372467 (N.D. Ill. June 13, 2003) (Pallmeyer, J.). The Seventh Circuit has determined that a district court may not prohibit a plaintiff from sending notice altogether. *See Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982). Beyond that limitation, the Seventh Circuit has not provided guidance on how a district court should exercise its discretion in the notice process.

This Court will employ a two-step method to determine whether Plaintiff is "similarly-situated" to potential members of the collective action. This two-step method has been used by a number of District Courts in the Northern District of Illinois. *See, e.g., Persin*, 2005 WL 3159684 at *1 (collecting cases, including circuit precedent from other federal appellate courts); *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003) (Norgle, J.); *Garza v. Chicago Trans. Auth.*, No. 00 C 0438, 2001 WL 503036, *2 (ND Ill. May 8, 2001) (Leinenweber, J.) (collecting cases).

Under the first step, the Court assesses whether Plaintiff has made a modest factual showing sufficient to demonstrate that the Plaintiff and other putative plaintiffs together were potentially victims of a common policy or plan that violated FLSA. *See, e.g., Persin*, 2005 WL 3159684, at *4. The "modest factual showing" requirement is not a stringent standard; a plaintiff need only demonstrate a factual nexus that binds potential members of a collective action together. *See Garza*, 2001 WL 503036, at *2. In this regard, caselaw repeatedly emphasizes that this first-step analysis is not as demanding as that employed at the second stage, and is certainly not as demanding as the analysis used to see if certification of a non-FLSA class is appropriate under Fed. R. Civ. P. 23. *See Flores*, 289 F. Supp. 2d at 1044; *Perez*, 2003 WL 21372467, at *1; *Vazquez v. Tri-State Mgmt. Co., Inc.*, No. 01 C 5926, 2002 WL 58718, *2 (N.D. Ill. Jan. 14,

2002); *Garza*, 2001 WL 503036, at *2. If Plaintiff can make a modest factual showing in favor of notice, the Court may, in its discretion, authorize notice to other potential members of the collective action. The possibility of a fact-intensive inquiry into whether all members of the eventual putative opt-in class are in fact similarly-situated does not preclude authorizing notice, although the need for such an analysis might weigh against or defeat certification of an actual class (or influence the form of any eventual certified class) at the second stage. *See, e.g., Persin*, 2005 WL 315684, at *1 ("Assuming the notice is sent, it is not until potential plaintiffs have been given a chance to 'opt in' to the collective action and discovery is complete that the court more rigorously reviews whether the representative plaintiff and the putative claimants are in fact similarly situated so that the lawsuit may proceed as a collective action.") (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001)).

As indicated, under the second step, the Court determines, after discovery closes, whether and in what form a FLSA collective overtime action should proceed to trial. At the second step, the Court undertakes a more detailed "inquiry into the veracity of the allegations that all putative claimants are similarly situated." *Persin*, 2005 WL 3159684, at *4 (citation omitted).

B.  Plaintiff Has Made a "Modest Factual Showing"

Here, Plaintiff has made a "modest factual showing" of a common policy or plan in violation of FLSA's overtime provisions. The Gambo affidavit states: STAs in the WTSC worked in excess of forty hours per week; much of the excess time was spent on pager duty; he was unable to travel more than several minutes away from his home while on pager duty; and Defendant had a policy of not providing compensation for pager duty. (D.E. 12, Ex. A at 1-2.) The Montenegro affidavit supports Gambo's statements about STA pager duties and WTSC's

compensation policies. (*See id.*, Ex. B at 1-2.) The Washington affidavit provides evidence that STAs in another NAR unit were subject to the same policy of not providing overtime compensation for pager duty. (*Id.*, Ex. C at 2.) Thus, Plaintiff has demonstrated that a number of employees who allegedly performed similar job duties were subject to the same or similar policy that may have violated FLSA. In addition, the email exchange between Watson and Montenegro, in which Defendant's agent admits that "[i]t looks like we were out of compliance" with FLSA's overtime provisions (*id.*, Ex. B, Att. 2), lends credibility to Plaintiff's assertions. Finally, the documents tendered in Plaintiff's supplemental memorandum further support Plaintiff's contention that other nonexempt STAs performed out-of-hours pager duty and did not receive overtime compensation. For example, one Lucent document refers to "[p]otential for significant overtime back pay for STA (nonexempt) employees within certain LWS organizations for on-call (pager) duty during the past 2 years" and notes that two organizations were "involved to date." (D.E. 22, Ex. E at 1.) While Lucent's ultimate conclusions about whether certain employees deserve overtime pay are not determinative to whether notice should issue, Defendant's internal recognition that this was an issue that potentially affected a number of LWS organizations (LWS being one of three top-level branches of Lucent) bolsters Plaintiff's request to issue notice.

    Defendant advances several arguments against authorization of notice. Defendant claims that its decentralized organizational structure made a "common plan or policy" impossible. (D.E. 16 at 6.) However, Plaintiff has provided evidence suggesting that multiple units had the same overtime-compensation policy for STAs on pager duty. (*Id.*, Exs. A-C.) Furthermore, Defendant cites no authority which requires a plaintiff to show that a common policy stems from a centralized authority; if multiple decentralized units adopted an unlawful policy with identical

content—for example, "we simply refuse to pay time-and-a-half, irrespective what the law requires"—concerning similarly-situated workers, that would appear to be a "common policy or plan," particularly for purposes of assessing the propriety of notice at step one. Nothing in the caselaw cited by the parties, at least, suggests that the common policy must stem from a top-down decision of central management. If individual business units adopt similarly unlawful policies and operate in materially similar ways as to materially similar workers, then a "common policy or plan" would appear to exist. And, again, the Court need not sort out all of these issues at this time; if discovery demonstrates that the putative class is inappropriate, unjustified, or unworkable, Defendant has reserved its right to oppose actual certification in some or all forms or to seek severance, as appropriate.

Defendant also claims that STAs who have accepted payment are not similarly situated. (D.E. 16 at 8-9.) The Court respectfully disagrees. Based on the authorities cited by the parties at this stage, at least, it appears that wholly-private settlements of overtime wages and liquidated damages claims are unenforceable; a valid waiver of claims can only be obtained through a settlement administratively supervised by the Secretary of Labor. *See Walton v. United Consumers Club*, 786 F.2d 303, 306 (7th Cir. 1986) ("[T]he Fair Labor Standards Act is designed to prevent consenting adults from transacting about minimum wages and overtime pay. [. . . .] Courts therefore have refused to enforce wholly private settlements. [. . . .] Section 16(c) creates the possibility of a settlement, supervised by the Secretary [of Labor] to prevent subversion, yet effective enough to keep out of court disputes that can be compromised honestly.") (citation omitted); *Flores*, 289 F. Supp. 2d at 1047 (similar, and citing *Walton*, 786 F.2d at 306).

11

Defendant also argues that notice is inappropriate because the scope of the collective action will depend upon a "case-by-case investigation" of each STA's job duties and compensation. (D.E. 30 at 2.) Citing *Hoffman-La Roche*, Defendant argues that "individualized inquiries such as these do not support the economy of scale envisioned by the FLSA collective action procedure." (*Id.*) Perhaps the investigation and analysis required to determine whether particular opt-ins are similarly situated, so as to fairly proceed to judgment in a collective action, ultimately will prove to be sufficiently unwieldy or cumbersome that a collective action will not be appropriate in some or any form. *See, e.g., Persin*, 2005 WL 3159684, at *4. But that does not, under relevant caselaw, mean that notice may not fairly issue under the more lenient step one FLSA analysis. *See, e.g., id.*

Defendant also cites *Holt v. Rite Aid Corp.*, 333 F. Supp.2d 1265 (N.D. Ala. 2004), and *Diaz v. Electronics Boutique of America, Inc.*, Case No. 04 CV 0840E, 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005), in support of the proposition that notice should not issue because individualized determinations predominate in this case. *Holt* is inapposite: the court denied the motion to facilitate notice after the parties had conducted extensive discovery (*id.* at 1274), so much discovery, in fact, that the court essentially proceeded to the step two FLSA analysis. *See id.* at 1274 & n.4. This Court is not undertaking (nor has either party even suggested that the Court should undertake) the step two analysis now. In *Diaz*, there were two features of the plaintiffs' claims that made them unamenable to a collective action. First, the named plaintiffs' claims were fundamentally distinct—one plaintiff alleged that he was improperly classified as exempt while another (who was classified as exempt) alleged that defendant manipulated and doctored his time records to avoid paying overtime wages. *Id.*, 2005 WL 2654270 at * 3.

12

Second, plaintiffs did not provide any evidence of a "common policy or plan"; all of their allegations were "insufficiently specific beyond their own respective circumstances." *Id.* at *4, *5 (punctuation and citations omitted). Neither of these features is present in the instant matter—the Plaintiffs' claims are fundamentally similar (at least as presently suggested, with some corroborating evidence, including Defendant's own assessment of things in at least some communications), and the Plaintiffs have provided evidence of a common policy or plan that suggests that their experiences may be representative of other STAs in NAR. Defendant may (or may not) ultimately be correct that individualized questions will predominate and that this problem, or others, will make a collective action inappropriate, impractical, or unwise. The Court takes no position on such issues, and both parties are free to raise appropriate arguments at step two. However, Plaintiff has sufficiently satisfied the burden at step one of the FLSA analysis for notice properly to issue. *Accord, e.g., Persin*, 2005 WL 3159684, at * 1.

Defendant's remaining arguments are tangential to Plaintiff's allegation that STAs did not properly receive overtime wages when their pager duty resulted in their working in excess of forty hours per week. Defendant provides evidence that at least one STA did not work overtime because of shift-scheduling (*see* D.E. 16, Ex. 3), and that another STA's freedom of movement was not restricted while performing pager duty. (*Id.*, Ex. 4). Defendant does not show (nor does Defendant ever explicitly claim) that it paid overtime wages when STAs performing pager duty worked in excess of forty hours per week. Furthermore, these affidavits are limited to a narrow time period and do not speak to the three-year putative time period covered by Plaintiffs' suit.

Defendant also provides evidence that STAs perform different duties (D.E. 16, Ex. 1 at 2), but, at this stage, Plaintiff need not demonstrate that all STAs performed identical duties in

order for the Court to authorize notice. *See, e.g., Garza*, 2001 WL 503036, at *3 ("That the Plaintiffs and other potential plaintiffs may have different jobs in the rail system, earn different amounts of money, and have attended different amounts or types of training does not mean that they are not operating under the same policies that allegedly entitle them to overtime pay.") (citation omitted). Defendant's arguments are more relevant to determining the ultimate scope, if any, of the collective action, an issue the Court will consider at step two. *See id.; accord, e.g., Persin*, 2005 WL 3159684, at *3-4.

C.  Plaintiff's Proposed Notice Form Is Acceptable With Slight Modifications

While most of Defendant's objections to the proposed notice have been incorporated into Plaintiff's amended version of the proposed notice (*see* D.E. 17, Ex. A), some points of disagreement remain. The Court orders the following modifications to the notice: (1) The "To" line should be limited to "persons employed as STAs who performed 'on-call' or 'pager' duty and have not been paid overtime wages for all hours worked in excess of 40 hours during any week"; (2) the "Description of the Lawsuit" section should be changed to reflect the changes in the "To" line; (3) in the section "Your Right to Participate in This Lawsuit," the phrase "may depend" should be changed to "will depend"; and (4) in the section "Your Legal Representation If You Join," recipients should be informed of their right to select separate counsel, bring a separate action, or not to sue.

The Court denies Defendant's remaining objections to the revised notice. Defendant requests that the section "Further Information" include defense counsel's name and contact information (D.E. 16 at 12); there is no basis in law or logic for this request. Defendant also argues that the notice should not include the case caption because it may be interpreted as judicial

approval of the merits of the suit. (D.E. 16 at 12.) The Court finds that Plaintiff's removal of the judge's name is sufficient to address this objection, and notes that a number of courts in this district have approved notices with the case caption suggested by Plaintiff. See, e.g., Trembczinski v. M&M Roofing, Inc., Case No. 03 C 5079 (Castillo, J.) (minute order dated Dec. 9, 2003); Sorenson v. CHT Corp., Inc., Case No. 03 C 1609 (Pallmeyer, J.) (minute order dated May 8, 2003). Finally, Defendant argues that the second and fourth paragraphs of the section "Who May Join the Lawsuit" should be deleted as redundant. (D.E. 16 at 10.) The Court finds this language acceptable and denies Defendant's request to strike these paragraphs.[4]

## CONCLUSION

Plaintiff's Motion (D.E. 12) is granted in substantial part, and the revised notice form is approved subject to the modifications discussed in this opinion, such that notice may issue within the NAR unit.

So ordered.

_____
Mark Filip
United States District Judge
Northern District of Illinois

Dated:   December 22, 2005

---

[4] In the Motion, Plaintiff also requests that this Court issue a gag order forbidding Defendant from communicating with any prospective class member concerning the suit or settlements of claims. The Court denies this request without prejudice. As the Court previously explained, this request has an aura of a prior restraint, a measure quite disfavored in the law. Furthermore, caselaw teaches that this step is unnecessary to prevent improper manipulation of putative opt-in plaintiffs. See Flores v. Lifeway Foods, Inc., 289 F. Supp. 2d 1042, 1047 & n.2 (N.D. Ill. 2003). In addition, and independently, as was the case in Flores, Plaintiff has failed to create the clear record and specific findings that would justify this Court in considering the granting of such a gag order.